IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHUNZHI XIE and
BOBA TEA CREW, LLC,                                      Case No. 6:22-cv-01488-MC

       Plaintiffs,                                       **OPINION AND ORDER**

           v.

JIZHONG WU, BOBA CREW, LLC, and
BOBA TEA CREW WILLAMETTE, LLC,

       Defendants.
_____

JIZHONG WU, BOBA CREW, LLC, and
BOBA TEA CREW WILLAMETTE, LLC,

       Third-Party Plaintiffs
       and Counter Claimants,

           v.

CHUNZHI XIE, MEIYI LIN, ISAAC XIE,
BOBA TEA CREW, LLC, FROSTED
SPHERES ICE CREAM, LLC, BOBA ARENA,
LLC, and LY ACCOUNTING AND TAX
SERVICE, LLC,

       Third-Party Defendants
       and Counter Defendants.
_____

**MCSHANE, District Judge:**

       Plaintiffs Chunzhi Xie and Boba Tea Crew, LLC (collectively, "Xie") bring this

trademark action against Defendants Jizhong Wu, Boba Crew, LLC (collectively, "Wu"), and

Boba Tea Crew Willamette, LLC ("BTC Willamette"). This case arises out of a failed business

partnership between Xie and Wu. Xie brings claims for trademark infringement, trade dress

infringement, unfair competition, declaratory judgment, misappropriation of trade secrets, dissolution of a limited liability company, and defamation under federal and Oregon law. Compl., ECF No. 1. Wu, proceeding pro se, filed an Answer, Amended Answer, and Second Amended Answer asserting several third-party and counterclaims against Xie and various entities. *See* ECF Nos. 14, 17, 18. Xie moved to dismiss the counterclaims, and Wu again sought leave to amend his Answer. *See* ECF Nos. 20, 21. The Court granted Wu's motion for leave to amend and denied Xie's motion to dismiss as moot with leave to refile. *See* ECF No. 32. Wu filed another Second Amended Answer ("SAA") asserting counterclaims against Xie, Xie's wife and son, and multiple businesses affiliated with Xie, as well as BTC Willamette's accounting firm, LY Accounting and Tax Service, LLC ("LY"). *See* ECF No. 33. Xie and LY now move to dismiss Wu's counterclaims.[1] Because Wu failed to allege plausible claims for relief, Xie and LY's Motions to Dismiss (ECF Nos. 35, 38) are granted. Xie's motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e) is also granted.

---

[1] In his response, Wu argues that Xie's motion to dismiss is untimely. Xie responds that Wu filing his Second Amended Answer on CM/ECF does not satisfy his service obligations. Even if Wu is correct, the Court may treat an untimely motion to dismiss as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). *See Motley v. Smith*, No. 08-cv-01423, 2011 U.S. Dist. LEXIS 69369, at *4 (E.D. Cal. June 27, 2011) (citing *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 955 (9th Cir. 2004)). The legal standards for both motions are the same. *See id.* In the interest of judicial economy, the Court will consider the merits of Xie's motion.

The parties are advised that under Fed. R. Civ. P. 5(b)(2)(E), service to a registered user of the Court's electronic-filing system, CM/ECF, is complete when the document is filed on CM/ECF. Attorneys admitted to the bar of this Court are registered users of CM/ECF. *See* LR 5-1(a). Non-registered users, such as Wu, must file all documents with the Clerk's Office in paper form. LR 5-1(b). "A filing party is responsible for perfecting service on a Non-Registered User in any manner permitted by the Federal Rules of Civil Procedure or these local rules and for filing a Certificate of Service." *Id.* To avoid confusion in the future, Wu should include a Certificate of Service as part of his filings going forward. Pursuant to Fed. R. Civ. P. 5(b)(2)(E), Wu may indicate in his Certificate of Service that he is effectuating service through CM/ECF. In that event, service will be complete upon the date of electronic filing. As registered users of CM/ECF, it is Xie's counsel's responsibility to monitor the case docket and track any response deadlines accordingly.

## FACTUAL BACKGROUND[2]

Xie first opened Boba Tea Crew, LLC at a shopping mall in Albany, Oregon in 2019.

SAA Defense ¶ 14. Xie and Wu met sometime in 2019 and discussed opening new boba tea

shops together as partners. *Id.* ¶ 15. Xie registered BTC Willamette on June 23, 2020. *Id.* In

February 2021, Xie told Wu that he signed a lease for the BTC Willamette shop located in

Keizer, Oregon and asked if Wu still wanted to work together. *Id.* ¶ 17. Wu agreed to do business

with Xie, understanding that Xie would handle the setup of the BTC Willamette shop in Keizer

and Wu would take over store management once it was opened. *Id.* In March and April 2021,

Xie ordered signs for the store and hired a construction company. *Id.* BTC Willamette began

operating on June 23, 2021.[3] *Id.* Wu began managing employees at BTC Willamette on July 15,

2021 and invested $39,000 for 50% ownership of the company on July 25, 2021. *Id.* ¶¶ 20-21.

Xie and Wu executed BTC Willamette's Operating Agreement on July 27, 2021. Xie Decl. Ex.

1, ECF No. 36.[4] Xie and Wu signed a lease for a Eugene location of BTC Willamette on October

5, 2021. SAA Defense ¶ 25. Around the same time, Xie and his son, Isaac, registered another

boba shop called Boba Arena, LLC. SAA Counterclaims ¶ 7.

The relationship between Xie and Wu appears to have deteriorated around June 2022. Xie

and Isaac's shop, Boba Arena, opened in June 2022 in a location about five miles from the BTC

Willamette shop in Keizer. *Id.* Wu alleges the competition from Boba Arena in close proximity

---

[2] The following facts are taken from Wu's Second Amended Answer. The Court accepts these allegations of fact as true and construes them in the light most favorable to Wu, the non-moving party. *See Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000).

[3] Wu states the date of BTC Willamette's opening as June 23, 2022. Based on the timeline of events, the Court assumes this is an error. *See* SAA Defense ¶ 57 (stating BTC Willamette was opened in June 2021).

[4] The Court may rely on outside documents incorporated by reference in the complaint upon which the complaint "necessarily relies." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). Wu admits signing the BTC Willamette Operating Agreement and relies on various provisions of the agreement for both his defense and counterclaims. *See* SAA Defense ¶¶ 21-23, 40, 102; SAA Counterclaims ¶¶ 10, 13. The Court may therefore consider the Operating Agreement here.

to BTC Willamette caused BTC Willamette's profits to suffer. *Id.* Wu also opened two of his own shops named The Boba Crew near Portland in June and July 2022. SAA Defense ¶¶ 27-28.

On September 16, 2022, Xie asked Isaac to go to the Keizer shop and change the password of the cash register. *Id.* ¶ 48. Part of the proceeds from BTC Willamette on September 16 were routed to a newly opened Oregon Community Credit Union account. *Id.* ¶ 49. The next day, Wu was unable to open the doors of the Keizer shop and suspected that Xie blocked the entrance on purpose. *Id.* ¶ 50. On September 20, Wu paid a locksmith to open the shop doors. *Id.* Concerned that Xie would lock Wu out again, Wu took some of the inventory from the Keizer shop that he paid for out of pocket. *Id.* ¶ 50, 52. The next day, Isaac called the Keizer shop and told the employees they were fired. *Id.* ¶ 50. That evening, Wu tried to enter the Keizer shop to take some inventory and realized the locks had been changed. *Id.* Wu again tried to enter the Keizer store on September 22 to take some inventory when Wu and Xie got into an altercation. *Id.* ¶ 51. Xie hit Wu in the face and chest and threatened to kill Wu. *Id.* Wu called 911, and the police escorted Wu inside the store to take some important items. *Id.*

Based on these fact, Wu brings the following counterclaims: (1) return of RF-15 against Xie and Meiyi Lin; (2) malicious prosecution against Xie, Boba Tea Crew, and Frosted Spheres; (3) unfair competition against Xie, Isaac Xie, and Boba Arena; (4) return of investment against Xie; (5) additional return of investment against Xie; (6) misappropriation of assets against Xie; (7) misappropriation of assets against Isaac Xie; (8) misappropriation of assets against Xie, Isaac Xie, and Meiyi Lin; (9) misappropriation of assets against Xie and Boba Tea Crew; and (10) loss of tax credits and accounting records against Xie and LY. Xie and LY move to dismiss claims two through ten.

**STANDARD**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6),[5] a claim or counterclaim must contain sufficient facts that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

When considering a motion to dismiss, the Court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

**DISCUSSION**

The Court addresses each of Wu's counterclaims in turn.

**I. Malicious Prosecution**

Wu alleges that Xie brought this action for infringement of unregistered trademarks with "malicious intention." SAA Counterclaims ¶¶ 4-5. Xie moves to dismiss Wu's claim for malicious prosecution under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Xie's Mot. Dismiss 6-7, ECF No. 35. Xie argues the claim is not ripe. *Id.*

Because Wu's allegations do not relate to a criminal proceeding, the Court construes Wu's malicious prosecution counterclaim as a claim for wrongful initiation of a civil proceeding.

---

[5] Regardless of whether the Court construes Xie's motion as a motion to dismiss or motion for judgment on the pleadings, the standard of review is the same. *See Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

*See Checkley v. Boyd*, 14 P.3d 81, 91 (Or. Ct. App. 2000) ("An action for wrongful initiation of civil proceedings is the civil analog to a malicious prosecution action."). The elements of a wrongful initiation claim are:

> 1. Commencement and prosecution by the defendant of a judicial proceeding against the plaintiff; 2. Termination of the proceeding in the plaintiff's favor; 3. The absence of probable cause to prosecute the action; 4. The existence of malice or as is sometimes stated, the existence of a primary purpose other than that of securing an adjudication of the claim; and 5. Damages.

*Erlandson v. Pullen*, 608 P.2d 1169, 1172 (Or. Ct. App. 1980).

Wu's wrongful initiation claim fails on the second element. This proceeding has not terminated in Wu's favor. Wu's claim for wrongful initiation of a civil proceeding is therefore dismissed, with the understanding that Wu may assert this claim at a later date should this proceeding eventually terminate in his favor.

## II. Unfair Competition

Wu alleges that "Xie, using his son's name Isaac Xie," registered and opened another boba tea shop, Boba Arena, about five miles away from the BTC Willamette shop in Keizer. SAA Counterclaims ⁋ 7. Wu alleges that Boba Arena "directly competes with Keizer shop, and as a result, Keizer shop sales dropped significantly." *Id.* Wu further alleges that Xie breached his duty of loyalty to BTC Willamette under Or. Rev. Stat. § 63.155. *Id.* ⁋ 8. Xie argues that Wu's allegations do not plausibly lead to the conclusion that Xie breached his duty of loyalty. Xie's Mot. 7.

In Oregon, a claim for "unfair competition is limited to misappropriation of a competitor's intellectual property, such as trade name or trade dress, and it requires a showing of a likelihood of consumer confusion." *Volt Servs. Group v. Adecco Empl. Servs., Inc.*, 35 P.3d 329, 338 (Or. Ct. App. 2001). Additionally, Or. Rev. Stat. § 63.155 describes an LLC member's

duties of loyalty and care to the LLC and other members. *See Prehall v. Weigel*, 221 P.3d 157, 160 n.2 (Or. Ct. App. 2009). A member's duty of loyalty includes, among other things, "[t]o refrain from competing with the [LLC] in the conduct of the business of the [LLC]." Or. Rev. Stat. § 63.155(2)(c). "Breach of the duty of loyalty is established by proof that the agent had a conflict of interest or was self-dealing." *Lindland v. United Bus. Invest., Inc.*, 693 P.2d 20, 25 (Or. 1984); *see also Synectic Ventures I, LLC v. EVI Corp.*, 294 P.3d 478, 484 (Or. 2012).

Wu failed to state a claim for unfair competition or breach of the duty of loyalty. As to unfair competition under Oregon common law, Wu made no allegations regarding the misappropriation of intellectual property or the likelihood of consumer confusion. As to Xie's alleged breach of the duty of loyalty, Wu alleged that Boba Arena is registered to Xie's son, Isaac. Wu's allegations that Isaac opened a boba tea shop near BTC Willamette does not state a claim for breach of the duty of loyalty against Xie. Even if Xie had some involvement with Isaac's business, Wu has not alleged any facts showing that Xie acted as an agent for both businesses with conflicting interests. *See Synectic Ventures*, 294 P.3d at 484-85. Wu's Third counterclaim for unfair competition is therefore dismissed.

### III. Return of Investments

Wu's Fourth and Fifth counterclaims are for return of investments. Wu alleges that he invested $39,000 for 50% ownership of BTC Willamette. SAA Counterclaims ¶ 10. The Operating Agreement, however, requires an investment of only $35,900. *Id.*; *see also* Xie Decl. Ex. 1, at 3. Wu seeks return of his excess investment of $3,100. SAA Counterclaims ¶ 11. Wu also claims that Xie did not deposit Wu's investment into the company's bank account, and that Xie himself did not invest the full $35,900. *Id.* ¶ 12-13. Wu claims he is entitled to an additional cash investment of $38,598. *Id.* ¶ 14.

Xie argues Wu's claims for return of investments are duplicative of Xie's claim for dissolution of BTC Willamette. Xie's Mot. 8. The Court agrees. Despite Wu's objection to the dissolution of BTC Willamette, a court may dissolve an LLC in a proceeding by a member "if the court finds that it is not reasonably practicable to carry on the business of the [LLC] in conformance with the articles of organization or any operating agreement." Or. Rev. Stat. § 63.661(1)(b). Upon entering a judgment of dissolution, the court directs the winding up and liquidation of the LLC. *Id.* § 63.671(2). As part of the winding up process, the LLC's assets are distributed, including any owed distributions and contributions to the LLC members. *Id.* § 63.625. Wu's claims regarding disputed amounts of investments into BTC Willamette will necessarily be addressed during the dissolution action. Wu's Fourth and Fifth counterclaims are therefore dismissed as duplicative.

## IV. Misappropriation of Assets

Wu's Sixth, Seventh, Eighth, and Ninth counterclaims are for misappropriation of assets. Wu first alleges that Xie breached his duty of loyalty by withdrawing $13,066.38 from BTC Willamette's bank account for personal use between April and July 2021. SAA Counterclaims ⁋ 15. Next, Wu alleges that Isaac used the company credit card on July 1, 2021 to pay a $228.91 personal fee and withdrew $11,215 from the company's bank account for personal use on July 30, 2021. *Id.* ⁋ 18. Wu claims that Isaac, as an authorized user of the company's bank account, breached his duty of loyalty "by converting company assets for his own use." *Id.* ⁋ 19. Next, Wu alleges that Isaac made two transfers to Lin Ying, a relative, and Meiyi Lin, Isaac's stepmother, from the company's bank account for their personal use. *Id.* ⁋ 21. Wu alleges that Isaac and Meiyi breached their duty of loyalty. *Id.* ⁋ 22. Finally, Wu alleges that Xie wrote five checks in April and July 2021 to pay for rent and expenses of Xie's other businesses. *Id.* ⁋ 24. Wu claims

that Xie breached his duty of loyalty to BTC Willamette by converting company assets for his own use. *Id.* ⁋ 25.

Xie argues that Wu lacks standing to bring a derivative claim on behalf of BTC Willamette because Wu was not yet a member of BTC Willamette when many of the alleged transactions occurred. Xie's Mot. 9-10; *see* Or. Rev. Stat. § 63.801(1) ("A member may not commence a proceeding in the right of a domestic or foreign [LLC] unless the person was a member of the [LLC] when the transaction complained of occurred."). Xie contends that Wu did not become a member of BTC Willamette until July 27, 2021 when Wu signed the Operating Agreement. Xie's Mot. 9-10.

A "member" of an LLC is defined as "a person with both an ownership interest in a [LLC] and all the rights and obligations of a member specified under this chapter." Or. Rev. Stat. § 63.001(21)(a). "A person becomes a member of a [LLC] on the later of: (a) The date the initial articles or organization are filed; or (b) The date stated in the records of the [LLC] as the date the person becomes a member." *Id.* § 63.245(1).

Based on the Articles of Organization and Operating Agreement in this case, it is clear that Wu became a member of BTC Willamette on July 27, 2021 when he signed the Operating Agreement. Xie filed the Articles of Organization on June 23, 2020 and listed only himself under "Initial Members/Managers." Xie Decl. Ex. 2, at 1.[6] Under Or. Rev. Stat. § 63.245(1), Xie became a member of BTC Willamette on June 23, 2020. Wu, however, is notably absent from BTC Willamette's Articles of Organization, and the Operating Agreement added Wu as a member along with Xie. Wu's contention that the Operating Agreement somehow relates his membership back to June 23, 2020 has no basis in law and finds no support in the text of the

---

[6] The Court may consider the Articles of Organization here as a matter of public record. *See Lee*, 250 F.3d at 688-89.

Operating Agreement. Accordingly, Wu may only bring a derivative proceeding for transactions occurring from July 27, 2021 onward. *See* Or. Rev. Stat. § 63.801(1).

Wu's Sixth, Seventh, Eighth, and Ninth counterclaims all refer to transactions occurring at various times in April, June, and July 2021. Wu's claims based on transactions occurring in April and June are dismissed. Pursuant to Fed. R. Civ. P. 12(e), Wu must specify in an Amended Answer the dates of the July 2021 transactions to determine whether he can maintain any of these claims.

Xie also argues that Wu has not plausibly alleged misappropriation by Xie, Isaac, or Meiyi. Xie's Mot. 10-11. As to Xie, the Court disagrees. If Xie withdrew company funds after July 27 when Wu became a member and contributed money to the company, Wu could plausibly allege that Xie breached his duty of loyalty to BTC Willamette by using company funds for personal use. The Court therefore will not dismiss Wu's breach of the duty of loyalty claims against Xie based on failure to allege facts supporting a plausible claim. As to Isaac and Meiyi, the Court agrees that Wu failed to state a claim for misappropriation. Wu has not alleged that either Isaac or Meiyi were acting without the knowledge or approval of Xie. Wu's Seventh and Eighth counterclaims against Isaac and Meiyi are therefore dismissed.

Finally, Xie argues Wu's claims for breach of the duty of loyalty should be dismissed as duplicative of Xie's claim for dissolution of the LLC. Xie's Mot. 11. The Court disagrees that these claims are duplicative. Breach of a fiduciary duty is not necessarily implicated in a dissolution action.

In sum, various portions of Wu's Sixth, Seventh, Eighth, and Ninth counterclaims are dismissed. Wu's Sixth counterclaim based on April 2021 transactions is dismissed. Wu's Seventh counterclaim against Isaac is dismissed. Wu's Eighth counterclaim against Isaac and

Meiyi is dismissed. Additionally, the claim based on a June 2021 transaction is dismissed. Wu's Ninth counterclaim based on April 2021 transactions is dismissed. As for the remaining portions of Wu's Sixth, Eighth, and Ninth counterclaims against Xie, Wu must allege in an Amended Answer the dates of the July 2021 transactions to determine whether any of these claims can survive. If none of those transactions occurred on or after July 27, Wu's remaining claims for breach of the duty of loyalty against Xie will be dismissed.

## V. Loss of Tax Credits and Accounting Records

Wu brings his final counterclaim against Xie and LY for loss of tax credits and accounting records. Wu alleges that Xie hired LY as the accounting firm for BTC Willamette. SAA Counterclaims ¶ 27. LY helped BTC Willamette apply for a Covid-19 tax credit. *Id.* According to Wu, the IRS approved the tax credit and Xie deposited the funds into BTC Willamette's bank account on August 31, 2022. *Id.* Later, without Wu's consent, Xie and LY amended BTC Willamette's tax form for 2021 and the IRS subsequently withdrew $27,336.38 from BTC Willamette's bank account. *Id.* Wu attempted to contact LY multiple times seeking an explanation and received no response. *Id.* ¶ 28. On September 15, 2022, Wu informed LY that it would no longer serve as BTC Willamette's accountant. *Id.* However, LY continued preparing financial statements and tax forms for BTC Willamette. *Id.* On September 26, Wu demanded that LY provide BTC Willamette's tax documents to him. *Id.* ¶ 29. On October 5, LY refused to provide any documents and issued a disengagement letter. *Id.* Wu claims that LY "violated its professional and ethical standards and intentionally prepared false financial statements and submitted false tax returns to IRS." *Id.* Wu seeks to recover the tax credit loss as well as BTC Willamette's financial records. *Id.* ¶ 30.

Xie and LY both argue that Wu failed to state claims for violation of professional and ethical standards, breach of fiduciary duty, fraud, or mistake. Xie's Mot. 13-14; LY's Mot. Dismiss 5-6, ECF No. 38. The Court agrees. The parties all acknowledge that the Operating Agreement designated Xie as the Tax Matters Partner for BTC Willamette, granting Xie the authority to handle the company's tax concerns under the Internal Revenue Code. Xie Decl. Ex. 1, at 5; SAA Defense ⁋ 21. Wu failed to allege that Xie or LY's actions in filing and amending the tax forms were wrong sufficient to plead breach of fiduciary duty, fraud, or mistake. Namely, Wu does not allege that BTC Willamette was entitled to the Covid-19 tax credit. Wu further failed to allege that LY acted without the authorization of Xie. At most, Wu has alleged an internal conflict between Wu and Xie as to the handling of the company's finances. The facts as alleged do not raise a plausible inference of wrongdoing by Xie or LY. Further, Wu's allegations do not come close to meeting the heightened pleading standard required for claims of fraud. *See* Fed. R. Civ. P. 9(b). Wu's Tenth counterclaim against Xie and LY is therefore dismissed.

## <u>CONCLUSION</u>

For the above reasons, Xie's Motion to Dismiss (ECF No. 35) and LY's Motion to Dismiss (ECF No. 38) are GRANTED. Out of an abundance of caution, the Court will allow Wu one final opportunity to amend his Answer. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."). In his Amended Answer, Wu must allege the dates of the July 2021 transactions relevant to his misappropriation of assets claims. The Court highly recommends that Wu obtain counsel to assist in his defense and assertion of plausible counterclaims. Wu's Amended Answer is due by June 26, 2023.

IT IS SO ORDERED.

DATED this 12th day of June, 2023.


_____/s/ Michael J. McShane_____

Michael J. McShane
United States District Judge